argument now in Diaz-Velasquez versus Barr. Mr. Ahmed if you're ready. Good morning honors. I'm Sir Ahmed for the petitioner in the matter of Guadalupe Diaz. Basically this is a case on review before the Fourth Circuit. This case was before this matter of Hernandez Avalos was pending at that time. It was then remanded to the BIA and sent back to the IJ. The IJ thereafter made a ruling supposedly looking at the facts but we disagree with the IJ's finding and so now we're before the court again. The primary issue in this matter is whether the petitioner Guadalupe Diaz-Velasquez belongs to a particularly social group which has been persecuted. We believe that the family relationship is well-founded that's been discussed in the Hernandez Avalos case and we believe that the facts of the petitioner are in line with the Hernandez Avalos case. In that matter which the Fourth Circuit ruled upon, the mother was approached by gangs because she refused to allow her son to be targeted. So in that situation there was a maternal relationship between the mother and the son. In Guadalupe's situation he was a 12-year-old boy. His father had been approached by gangs for monetary reasons. His father then fled and then the gangs approached the son and asked him for the whereabouts of the father. They then went to the son's school which is a petitioner and attempted to cut off his thumb. So his harm suffered was even greater than Hernandez Avalos. We believe the key issue here is whether this qualifies as a familiar relationship. The issue that the judge had, the immigration judge had, was that the immigration judge felt that there wasn't a familiar relationship, that there was, that this could have been anyone, that the gangs could have approached any member, whether it was family or non-family, to ask about the whereabouts of the father. But we believe that that is opposite to what the ruling in Hernandez Avalos was and that the immigration judge should have ruled that Guadalupe was approached because he was a son. He was the eldest son of the father and he was approached for that reason and his finger was attempted to be cut off for that particular reason. Counsel, can I stop you there and ask you a question? I think the motivation of the persecution, do you agree under the Cruz case, is a question of fact? Yes, yes. And the immigration judge, I think as you pointed out, concluded that the incident with your client was not at least the primary reason because of the family relationship, but was for the reason that they were trying to determine the location of the father. And my question is, under the Hernandez case, the court lays out that there were three threats made to the mother and the second two were because the mother wouldn't allow the son to be a gang member. And the court clearly said that was, basically there's no difference between that and the family member. But in footnote seven, it talks about the first threat, which was the reporting of the gang activities. And this court talks about how not all issues involving family members are necessarily due to the familial relationship. And I guess putting all that together, it looks like we have a question of fact issue and the we have Hernandez that seems to create a legal possibility that it's not due to the familial relationship. And the immigration judge then lists a series of facts, including that the other family members weren't persecuted back at the time and that since that time there hadn't been persecution. Under the standard of review, what's in their evidence to support the immigration judge's conclusion? Yes, Your Honor. The Cruz case does outline this and the judge is responsible for the fact-finding here. In this situation, the other family members were not approached. They went to two law enforcement officials to get help. They couldn't get any help. But the key issue here is, is his belonging to that family one reason, one central reason? And that's what the Crespin case addresses. And in the Crespin case, basically the quote from the Crespin case was, is it unreasonable to assert that the fact that Hernandez is her son's mother is not at least one central reason? So equivocating that with the matter of Guadalupe, we can also say the same thing. Is it not true that he is the son and that's at least one central reason? And I believe the one central reason was certainly the reason why he was approached as opposed to other children in the school, other people in the community. Let's footnote 6-7 to Hernandez-Mindem. When would that apply? When would that be a situation where a family member does receive persecution and it's not sufficiently connected to the familiar relationship? So in a situation where you've got, for example, the matter of LDA, in that situation the court found that there was some familiar relationship but they also approached the individual for other reasons, for profit-making. So in other situations where you've got family members but they're being approached for other reasons that are not directly linked, we believe that's an exception to what it would stand for. But I think in this situation he was only approached because of his connection to his father. They asked him 48 hours before, do you know where your father is? He wouldn't respond. In school he was approached and he was attacked at that time. So because of that situation we believe that he'd squarely falls within the one central reason argument, which is the Crestman ruling. And because of that we don't think that the judge made the proper decision based on the facts that were presented. Do you think it's a legal error or a factual issue? I think it's both. I think the judge, first of all, there was no testimony taken when the case went back down. He basically looked at the 2012 testimony and based on that original testimony said, well I don't think there's enough here. And then he made a legal decision. And the legal decision was that the fact scenario of Guadalupe's situation was different from Hernandez-Avalos. And we believe it rests squarely within the same kind of a framework where you've got a family member that's approached only for the reason for being a family member. Can I ask you a question? We have a bunch of cases since Hernandez-Avalos applying that posture of this case we remanded and asked the agency to look at Hernandez-Avalos but that was not our last word. And since then we have applied that case several times. We should be looking at those cases as well, right? Yes, that's true. Yeah, I don't know if there's a specific case that your Honor is referring to. Oh no, I just want to make the procedural posture of this case is unusual because we sent it back and said look at this one case. But I think that does not confine our consideration today because we have since Hernandez-Avalos was announced, we have construed it in many cases and we have rejected efforts to narrow it to cases where the family member who's specifically targeted has authority over the family member the gang is really after. So we've got, that was not our last word. There's more after that. That's true, Your Honor. That's true, Your Honor. But I haven't found any case that actually contradicts the facts in this situation. So thank you, Your Honor. Can I ask you a question? Assuming, just for the sake of argument, that there were a nexus problem in this case, that the agency either factually or legally had sort of misunderstood the nexus issue, what would happen then? What would the implications of that be in your view? We would remand and ask the agency to do what? If there was a nexus established, I believe one option would be to remand and have further testimony taken to clarify exactly what this relationship was. But we also believe that this case should be overturned. Let me, I'm sorry, let me try to be more specific. Just assuming only for the sake of argument that we thought on this record a nexus had been established, then what happens? Then I believe this case is ruled in favor of Guadalupe in this matter. If the case is ruled in favor of Guadalupe in this matter, then the case is ruled in favor of Guadalupe in this matter. Well, doesn't there still have to be a threat of future persecution? The law for withholding a removal is if there is an establishment of past persecution, that qualifies for future persecution. I thought it was just that there's a presumption of future persecution, but the government can still rebut it. Yes, exactly. Yes. And in that situation, we've had cases where it's gone back down to the court and the IJ then asks the government to rebut it. It's their burden. And at that point, if the government is not able to establish, for example, relocation or any other alternative for him, then the judges have ruled in our favor. And that has happened in Third Circuit. So you're saying what you would want us to do is remand the case for evidence on future persecution? Exactly. Yes, that would be the other option. I presume that's also your answer to the board's sort of alternative holding that you failed to establish future persecution is that that analysis was done without the benefit of the presumption and therefore we couldn't, as an alternative basis, rely on that to affirm the denial withdrawal. It actually has to go back. It has to go back. Exactly, Your Honor. Thank you. Thank you. Good morning. May it please the Court. I'm Paul Fiorino for the Attorney General. I wanted to start off with an observation that Judge Quattlebaum made which strikes to the heart of what we think is the correct result in this case. We think this case does fall under Footnote 7 of the Hernandez-Avalos case because, as a question of fact, we think substantial evidence supports the finding that his family relationship was not a reason that the gang members threatened him. As you talk about that, if Judge Harris is right, I ask that question. We have the Cruz and we have the Salgado-Sosa case and others. If you could, in your argument, address how this case relates to really all three. Sure. I've got another one. I'm sorry. Can I also ask you to address Zavalado Policiano, which is the case where we said you cannot limit Hernandez-Avalos to the facts, to cases where the particular person being persecuted has an authority position over the other family member. Correct. Thinking about Cruz and Salgado-Sosa, there are two distinctions between those two cases and in this case. The gang members in those cases threatened the family members because the family members were in a unique position owing to the events that had happened. In Cruz, for example, the family member who had the type of authority that would have motivated her to make the call, I'm not going to let my son join these gangs. Salgado-Sosa, so she was unique among all the people that the gang could have approached because she had the one thing that they wanted. Was there evidence in that case that there was no other person who might have had like a persuasive effect on the son? There wasn't a teacher, there wasn't a friend, there wasn't someone else who might have been able to join a gang. I don't remember that. I don't know off the top of my head. It just seems to me like if the question is, as the agency framed it here, I think it was something like, could they have tried to find someone else who knew where the father was? Assume the gang could have tried to find someone else who had this son's ear. I certainly don't remember, just from reading the case, that anyone tried to eliminate that possibility. What you have to target is the motivation of the persecutor. Is it the government's position that this boy would not have been targeted, but for his relationship, that he would have been targeted even if he were not his father's son? Is that the government's position? They would have gone to him anyway? If he were not his father's son, he's just a 12-year-old boy. Yes. If the gang thought he knew where this man was, yes. Why would the gang have any evidence that this boy, that the gang had some other reason to believe this boy might know where the father was or that the father might come out of hiding if this boy were attacked? I don't know if there's any other evidence, but the point I'm trying to make, Your Honor, is that you have to look at the motivation of the persecutor. It is not strictly but-for causation. But-for is a much higher standard than what's required. No. You have to look. You start back with Elias Zacharias, which says that the statute makes the motive critical. There has to be a persecutory motive. What you look for is a motive on the part of the persecutor to overcome the protected characteristic of the victim. And that's what the board said in Acosta. There has to be a So a minute ago you said, you know, in trying to distinguish Cruz, you say the same idea, right? The relationship that motivated action by the son, right? But it seems odd to say that the mother's control over a son, which in my experience is often quite limited, except perhaps in Judge Harris's case, is somehow greater than a father's love for his son, such that that would motivate the father to take that action. I mean, it seems like to me, and I don't want to get, I'm a little bit flippant about which one of those bonds is stronger, but it's hard for me to see how they're different in kind. That if the question is, is the relationship such, that being mother to son or son to action by the father, that seems like the same kind of motivation in Cruz. Well, there's, there's, look, is our Reed Hernandez Avalos, which, which the court asked the board to do, the key factor was the control of the mother had over the son. The agency in this case found that the son had, didn't have the same control, maternal control over the father. But, but let me get back to my other point here, if I may. This, this discussion is getting a little bit too, too narrowly focused on causation as, as, as in terms of the family relationships. If I could say that better. You have, going back to the matter of Acosta, which is the board's decision, you have to look at the motivation of the persecutor to overcome the protected characteristic. That the dislike of the person who's the persecutor here doesn't care one iota about the son, except insofar as that it can motivate action by other family members or the father or somebody else. Exactly. The persecutor doesn't care about the son and his relationship to the father. It doesn't have a persecutory motive against the family in the same way that, yes. We have a bunch of Fourth Circuit case law on this. We've said over and over again, we don't care what the immediate trigger is, right? It doesn't matter if he hates the son and it doesn't matter if he hates the family because of something to do with the family. What matters, we, and we've said this over and over, all that matters is whether this person was singled out as among all the other people the gang might have gone to to try to flush this guy out of hiding because of the relationship with the father. And I, I mean, I just sort of feel like if the government isn't on board with that case law, you got to ask us to go on bunk. But is there some way we can do this? Well, we would like to. We would like to, if we find the right, if we find the right opportunity because to be. But do you have an argument for us as to how we can get around all the times we've said this as a court? Well, you know, we've, we've discussed this, the government and as the board itself has noted, the jurisprudence on nexus in the fourth circuit is different from other circuits. And it's because in our view that the court has, it has gone astray from looking at the persecutory motive requirement that the board first set down in matter of Acosta. I'm getting that from your argument, but what do you want us to do about it as a panel of three judges? As a panel of three judges, we would like you to look at the board's decision, ask yourself a question, does substantial evidence support the agency's finding that a persecutory motive did not motivate the gang to threaten him and affirm the board's decision? That's what we'd like you to do. Because under, I'm sorry, finish your answer. Yes, just, just to, not to put too fine a point on it, not to beat a dead horse, but the footnote seven that you asked the board, in Hernandez-Avalos, that you asked the board to look at controls this case. So under this court's case law, you can and should find that substantial evidence supports the board's decision. I may be out. That last thing you said is what I'm trying to figure out. I'm trying to figure out if you, if the government believes under current Fourth Circuit law, whether this case is distinguishable from the series of cases we talked earlier, and therefore not that those cases don't require us to reverse the immigration judge, or whether you think those cases do require us to reverse the immigration judge, and you think our law ought to be different and we ought to go and bank? A little bit of both. You see, what we're doing here is we're arguing about other cases that the board was not asked to address. And so for me to, to basically make an argument for the board that it did it, like we're talking the, not Creston-Valladares, but the one case that Judge Harris mentioned. Zazualeta-Policiano? I think, I think so, yes. Where we basically confronted exactly this argument and said, no, you can't distinguish, you can't use footnote 7 in that way, that this principle is larger than one family member having authority over another. Right. But to answer Judge Quattlebaum's question, this case can be resolved on, on the facts of, on the decision of Hernandez-Avalos, which is what the, the board was asked to do. If the... Can it be distinguished from the case that, the other cases? I mean, we're... Yes. In, in, in my, in my view, and I realize the panel may not agree, but we think that there's, that the distinction is the, the, you can, in Salgado-Sosa and in Cruz. The unique factor of, the unique factors created by the familial relationships in those cases, the victims of the, the threats were unique among everybody else because of the familial relationship. Because, because the, the gang was motivated by something that the familial relationship prevented them or somehow hindered their goal. In this case, the gang had no beef against the family. The gang had no quarrel. It wasn't like a Hatfields and McCoy's type of family feud. It was simply the gang wanted money and they wanted land and they figured that the, that his son would know, would know where it is. They have no beef against the family. How do we know this? Well, this wasn't a finding made by the agency, but... Salgado-Sosa absolutely said you don't have to have beef against the family. It doesn't have to be Hatfields versus McCoy. You can just want money from the family. And the father won't pony up. To that extent, Salgado-Sosa is wrong, we think. It's, it's quite wrong because the, the, the persecutory motive, like I say, go back to Hernandez, go back to a matter of Acosta, go, go back to Elias Zacharias. Persecutory motive. The court said a matter of Acosta, the alien possesses a belief or characteristic that a persecutor seeks to overcome in others by means of self-defense. So, the, the key words is character, a belief or characteristic that the, that the persecutor seeks to overcome. I don't understand why you insist on saying those cases are wrong. I don't understand why you don't point out, for example, in Cruz that there was evidence that the family relationship was a central factor because they continued to persecute for two years after the threat of going to the police was wrong. I don't understand why you aren't saying in, in Salgado Sosa that after the people left that town, they continued to follow not just the one person but the whole family. It seems like you're, I mean. I was about to say that, but I, I, I got interrupted. I was about to say that yes, we know this because it, it is part of the board's second finding, looking at the family that's still down in Guatemala. They haven't been touched. They haven't been bothered at all. The, the, the, the, since now that the father has no land, he has no money, he's confined to a wheelchair, the gang hasn't bothered him. What does that tell you? That's, that, that tells me that, that, that the gang didn't have a persecutory motive against the family per se. They simply wanted the family. That wasn't part of the, what mattered is whether they were going after this individual because of the relationship with the family, not why they were interested in the family. Well, I guess we're going to have to agree to disagree, Your Honor. Again, we say that our point is, our, our position is that a persecutory motive is required as, as stated by the board in matter of Acosta and its progeny, that in this particular case, there was no persecutory motive as, and this case is distinguished from Saldado Sosa and from Cruz by the unique factors and as Judge Quattlebaum pointed out, the absence of any harm to the family when the land and the money was no longer present. Is the distinction you're trying, I'm just, I'm really trying to just understand the distinction you're if they, and these are hypotheticals, right? They took the son and they held him for ransom, right? In one instance, versus they took the son and tried to beat information out of him, right? And if we knew those were the sole motives, right? There weren't an overlapping motive, but in one instance was literally just to get information. We want the, the code to unlock the safe versus we want to such that in the ransom case there's some sort of, as you call it, you know, motive about, you know, prosecuting those folks, but in the information case they're not? Is that the distinction? I don't think that that case is distinguishable either, because in both cases they... In either case it's sufficient. Correct. Because the ransom case, they want money. They're using the son and his relationship as a tool to get that money, but the relationship is not these protected characteristic that they want to overcome. That's, that's the key factor about persecutory motive. It's the protected characteristic that the persecutor wants to overcome, and it's present in neither of those cases. It's not present in this case. The reason you think Hernandez works is because what they're overcoming is fidelity to his mother's wishes. Yes. That's the... Right. That's how you square that with Hernandez. Yes. Thank you very much. Thank you, Your Honors. Very briefly, some of the points that counsel made I do disagree with. This issue of the gangs being versus the family, I don't think it has to be the entire family as a whole, and you don't have to show every single family member being persecuted. I think this is something that Judge Quattlebaum addressed also. Even if one family member is threatened or harassed for the sake of the family, I believe that's enough. Referring to Salgado Sosa, the words of this court specifically were, however characterized Salgado Sosa's relationship to a stepfather is indisputably why he, and not another person, was threatened. Similarly, in Guadalupe, it is indisputable that Guadalupe was threatened for the relationship with his father. I do think that the government is trying to draw a distinction between a mother-child relationship, as in Hernandez-Avalos, compared to a son-father. I don't think we can draw that, and I don't think this court would want to draw that, that only people of authoritative nature, the parents, are the only ones that could suffer persecution. If a son, the eldest he's being threatened, his thumb is being cut off to get information on the father, we believe that's just as viable as a mother being threatened for the child. As a factual matter, you're obviously far more familiar with the record than I am. Is it fair, it seems to be, you just used the word, to get information. Is it fair to say that the IJ found, and it's supported, that the IJ found that they were looking for, well, I'll read you the IJ's decision, your Honor. It says the respondent was... I want to read that, I want to understand whether your position is... Sure. I don't need you to read, I'm reading part I can handle. I'm trying to get the understanding of, does the record support that the motive was to get information? Because you could imagine two different ways that you could find the father, right? One is, he's at this address, right? The other is, you know, make him come out of hiding or we're gonna kill your son, right? Those are two very different motives. It seems as if the IJ and the record supports the first option, that is, we're just trying to find out where he is, but there's a little hint of the second motivation, both of which are trying to find the father, but one is information focused and one is trying to force action. Exactly, your Honor, and I don't believe the IJ... Which exactly can't be the answer? I'm asking which of those or both exactly can't be the answer? So is it just about information? Is it about action? Or is it about both? I think it's about both. Unfortunately, Judge didn't address that. What if it was just about the first? What if the reading of that was just a motivation to get information? And would that, in your view, be an appropriate basis for determining that the familial relationship was not a central factor? I believe it is. If a family member knows the whereabouts of someone, I still believe that falls within Hernandez-Avalos. I think that's how broad we should be looking at this. Wouldn't it particularly fall within Hernandez-Avalos if, as in this case, the family member doesn't know where the father is, right? Because now the assumption, the question has to be, would the gang, could the gang, have done this to someone else who didn't, in fact, know where the father was? And the answer seems like it would be no, right? The only reason they picked this boy is because they thought he knew where his father was, but it turns out he didn't, right? Isn't that what the record shows, that he did not know where the father was? He did not know. He did not know, exactly. So they're obviously not doing this to someone else who doesn't know where the father is. Exactly, exactly, Your Honor. I think one other mistake that the judge made, the IJ made, was that he said that the respondent was harmed as a consequence of the gang members not able to find the father. We don't believe that's correct either, and the record doesn't reflect that this was some kind of retribution because they couldn't find the father. They had asked the respondent, the petitioner, 48 hours before, where's your father? When he didn't respond, they went to his school, kidnapped him, and then did what they did. Thank you, Your Honor. Yeah, I have one more question. Yes, Your Honor. Back to, Judge Harris, I asked the relief you saw earlier and talked about remanding to address whether the presumption can be, could be rebutted. Is that, that's the relief you're seeking? We believe, Your Honor. Yeah, that's the correct relief. Would that involve a, would that involve taking evidence, or would that be based on the record as it now exists? Well, I know in the past what's happened in the Third Circuit is that they do take evidence, and the government has to provide some evidence of presumption, so. But there, right now, based on the record, there's 25 years of, you know, non-incident time between the mother, the rest of the siblings, and the father. And so, is there any evidence on which that presumption, quite frankly, couldn't be rebutted based on the record we have now? It would be very difficult to rebut. I mean, only because of the time frame that's elapsed. And unfortunate as it is, it does, it does happen that this much time does take place in quite a bit of situations. But I probably want to address that and have, talk to the witness and figure out if anything else has happened. For example, have there been additional threats or letters made subsequent to the 25 years ago incident? Thank you, Your Honor. Okay, we'll come down and greet counsel, and then we'll go directly to our final case for the day.
judges: Pamela A. Harris, Julius N. Richardson, A. Marvin Quattlebaum Jr.